UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:19-CR-214-7 |
| | § | |
| ULISES FRANCISCO CORTINAS; aka | § | |
| CHIQUILIN | § | |

## ORDER DENYING MOTION TO SUPPRESS

Defendant Ulises Francisco Cortinas (Cortinas) is charged by indictment with one count of conspiracy to possess with intent to distribute controlled substances and two counts of money laundering. D.E. 1. Before the Court are Defendant's motion to suppress (D.E. 119) and the Government's response (D.E. 134). The Court held an evidentiary hearing on the motion on July 24, 2019. For the reasons set forth, the motion to suppress (D.E. 119) is DENIED.

## FACTS

In December 2017, the Drug Enforcement Administration (DEA) obtained a court ordered wiretap to intercept phone conversations of co-defendant Rodolfo Hernandez Ramos (Ramos) for information on illegal narcotic sales. Through a series of Ramos' phone calls, the DEA believed that Ramos was discussing the sale of cocaine with an unidentified person located in Mexico. This unidentified person told Ramos to meet with Defendant Cortinas to drop off money for an alleged sale of cocaine. On December 19, 2017, Ramos and Cortinas spoke on the phone to arrange a meeting that evening at the

parking lot of an HEB grocery store in Brownsville, Texas. Ramos told Cortinas he would be in a red truck.

At approximately 7 p.m. on December 19, 2017, DEA Task Force Officer Joe Villarreal (Officer Villarreal) drove to the HEB parking lot to surveil the area for the anticipated drug transaction. Soon after, a maroon Ford 150 and a Pontiac G6 entered the lot and parked parallel to each other within forty yards from Officer Villarreal's position in his unmarked vehicle. Officer Villarreal witnessed a man exit the Ford and walk toward the Pontiac, carrying a brown paper bag. The man handed the bag to an occupant in the Pontiac. According to Officer Villarreal, he heard an unidentified DEA agent report on the police radio that the Pontiac might not have a front license plate, in violation of Texas law.

After the man returned to the Ford, both vehicles exited the parking lot and turned onto the street in opposite directions. Officer Villarreal followed the westbound Pontiac and attempted to drive ahead of the vehicle to see whether it had a front license plate. Due to heavy traffic, he could not see the lower front area of the Pontiac. Officer Villarreal then contacted Brownsville Police Officer Joseph Mazur (Officer Mazur), who was assisting with the investigation, to perform a traffic stop on the Pontiac. According to Officer Mazur, Officer Villarreal told him that the vehicle did not have a front license plate. Based on this information, Officer Mazur activated his lights and pulled the Pontiac over.

As Officer Mazur approached the vehicle, the driver, Cortinas, held an ID card outside of his window. Officer Mazur took the ID card and explained that he pulled him

over because the vehicle was missing a front license plate. Cortinas looked confused and Officer Mazur immediately saw that the Pontiac did have a front license plate. With the ID card still in his hand, Officer Mazur told Cortinas he was mistaken, but needed to know that he had a driver's license before he could let him go. Cortinas stated that he was working on "fixing" his driver's license.

Officer Mazur proceeded to run Cortinas' information to ensure that he had a driver's license. Upon learning that Cortinas had a suspended driver's license and no liability insurance, Officer Mazur arrested Cortinas. By then, Officer Hugo Martinez arrived in response to Officer Mazur's request for assistance. After receiving consent from the Pontiac passenger, Cortinas' wife, to search the vehicle, Officer Martinez found approximately $36,980 inside of a paper bag on the floorboard of the vehicle.

Cortinas moves to suppress this evidence and statements he made to the officers as fruit of the poisonous tree, arguing that Officer Mazur's baseless traffic stop was an unreasonable seizure under the Fourth Amendment.

## DISCUSSION

The Fourth Amendment guarantees individuals the right to "be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. An automobile stop by a police officer, even if only for a brief period and for a limited purpose, constitutes a Fourth Amendment seizure of persons. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Under *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968), the reasonableness of the automobile stop is determined by: 1) whether the officer's action was justified at its inception, and 2) whether the search or seizure was

reasonably related in scope to the circumstances that justified the stop in the first place. Generally, any evidence obtained as a result of a defendant's illegal seizure is excluded at trial. *United States v. Lopez-Valdez*, 178 F.3d 282, 289 (5th Cir. 1999).

Asserting that Officer Villarreal provided Officer Mazur with false information of a missing front license plate, Cortinas challenges the stop on the grounds that (1) there was no lawful basis for Officer Mazur to initiate the stop, and (2) the investigative detention exceeded the permissible limits of the traffic stop.

### A. The traffic stop was justified at its inception.

For a traffic stop to be constitutional at its inception "an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez–Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). Under the good faith exception, evidence obtained as a result of an officer's reliance on incorrect information from another officer is admissible as long as the officer "maintain[ed] a good faith and objectively reasonable belief that he ha[d] an adequate foundation to make a stop." *United States v. De Leon-Reyna*, 930 F.2d 396, 399-401 (5th Cir. 1991) (en banc). In assessing whether an officer's judgment is objectively reasonable, courts must consider the totality of the circumstances. *Id.* at 399 (citing *United States v. Cortez*, 101 S. Ct. 690, 695 (1981)). The inquiry does not need to rise to the level of probable cause. *United States v. Garcia*, 942 F. 2d 873, 876 (5th Cir. 1991). Although the information relied on is erroneous, it "may not be disregarded in determining either the legality of the stop or the availability of the good faith exception." *De Leon-Reyna*, 930 F.2d at 400.

Under the totality of the circumstances, an objective officer in Officer Mazur's place could have reasonably relied on the report of a missing license plate. Officer Mazur, who has been a law enforcement officer for nine years, had worked with Officer Villarreal in previous investigations. Officer Mazur testified that he knew that the Pontiac was a target in an investigation and Officer Villarreal, the lead officer of the investigation, told him that the front license plate was missing. Officer Mazur further testified that he could not verify whether the front license plate was missing without the risk of losing sight of the Pontiac in the heavy traffic.

The Court notes that Officer Villarreal's testimony at the hearing was inconsistent with the police report he wrote shortly after the incident. In his report, Officer Villarreal stated that he observed the "Pontiac drive by my unmarked unit and it appeared that the vehicle did not have the front license plate or it was non-visible." Def. Ex. 3. But he testified that he based the license plate information solely on what he heard on the police radio.

However, the good faith exception asks whether Officer Mazur had a good faith and reasonably objective belief that Cortinas' vehicle was missing the front license plate. There was no evidence that Officer Mazur's testimony was untruthful or that he had any reason to question what Officer Villarreal told him. Moreover, the Pontiac matched the description and license plate number provided to him by Officer Villarreal.

Citing to *United States v. Lopez-Valdez*, 178 F.3d 282 (5th Cir. 1999), Cortinas argues that an officer's incorrect belief that a vehicle is in violation of traffic laws is insufficient to justify a vehicle stop. Cortinas relies on cases where the officer conducted

a stop based on a subjective belief that the vehicle violated traffic laws. *Id*. at 288 (officer falsely believed that a vehicle's broken taillight violated Texas Transportation Code); *United States v. Granado*, 302 F.3d 421, 423-24 (5th Cir. 2002) (trooper wrongly believed that an obstructed license plate violated Texas law). Here, a missing front license plate is a violation of state transportation law. Tex. Transp. Code § 504.943. Because Officer Mazur had a reasonably objective basis to believe that Cortinas' front license plate was missing, the good faith exception applies to justify the initial stop of Cortinas' vehicle.

### B. Officer Mazur had reasonable suspicion to extend the detention.

"The seizure remains lawful only so long as unrelated inquiries do not measurably extend the duration of the stop." *Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) (internal quotation marks and citation omitted). During a traffic stop, an officer may request a driver's license, insurance papers, and the vehicle's registration. *United States v. Santiago,* 310 F.3d 336, 341 (5th Cir. 2002) (citation omitted). If an officer develops reasonable suspicion of additional criminal activity in the meantime, the officer may extend the detention to investigate the newly formed suspicion. *United States v. Macias*, 658 F.3d 509, 517 (5th Cir. 2011) (citation omitted). Once Cortinas voluntarily handed Officer Mazur an identification card and admitted that he did not have a driver's license, Officer Mazur had reasonable suspicion, if not probable cause, to investigate the status of his driver's license and liability insurance, which led to his lawful arrest.

## CONCLUSION

For the foregoing reasons, the motion to suppress (D.E. 119) is DENIED.

ORDERED this 5th day of September, 2019.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE